IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| William G. Dean, Jr., | Civil Action No. 8:06-1460-HFF-BHH |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, Commissioner of Social Security, | **OF MAGISTRATE JUDGE** |
| Defendant. | |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, William G. Dean, Jr., brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration denying his claim for Supplemental Security Income ("SSI") under the Social Security Act.[2]

### **RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff was 53 years old on the date of the Administrative Law Judge's (ALJ) decision. (Tr. at 57.) The plaintiff completed the ninth grade and has worked as a custodian, construction worker, centrifuge technician, and nursing assistant. (Tr. at 70, 81-88.)

The plaintiff filed an application for SSI on March 28, 2003, alleging disability since July 31, 2001, as a result of a stroke, degenerative joint disease in the knees, numbness

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

[2] The plaintiff contends that he is appealing a decision that denied the plaintiff both Disability Insurance Benefits ("DIB") and SSI. While it is true that the plaintiff filed an application for DIB (Tr. at 220-22), the decision on appeal concerned only SSI benefits. (Tr. at 14, 26.)

and pain in the arms, muscle spasms, removal of two cervical discs, and depression. (Tr. at 57-60, 64.)  The plaintiff's application was denied initially and upon reconsideration, and he requested a hearing before an ALJ, which was held on December 17, 2004.  (Tr. at 29-42, 225-49.)  On July 27, 2005, the plaintiff's claim we denied by the ALJ, who found he could work as a bonder or bench assembler.  (Tr. at 14-26).  The Appeals Council denied the plaintiff's request to review the ALJ's decision (Tr. at 6-8), thereby making the ALJ's decision the final decision of the Commissioner.

In making the determination that the plaintiff was not entitled to benefits, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant's status-post cerebrovascular accident/transient ischemic attack osteoarthritis of the right knee, and status-post prior neck surgery with residual numbness in the hands are "severe" impairments, based upon the requirements in the Regulations (20 CFR § 416.920).

3. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

5. The claimant has the residual functional capacity for light work.  He is able to occasionally lift and carry twenty pounds and frequently ten pounds.  He is able to stand for six hours in an eight-hour workday, walk for six hours in an eight-hour workday, and sit for the remaining two hours.  He is limited to no climbing, crawling, balancing and no more than occasional fine manipulation.  He is to have a sit/stand option, at will.  He is to use a cane while walking/standing.  There is to be no exposure to hazards.

6. The claimant is unable to perform any of his past relevant work (20 CFR § 416.965).

7. The claimant is an "individual closely approaching advanced age" (20 CFR § 416.963).

8. The claimant has "a limited education" (20 CFR § 416.964).

9. The claimant has no transferable skills.

10. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 416.967).

11. Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.11 as a framework

> for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as a bander and as a bench assembler.

12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He

must make a prima facie showing of disability by showing he is unable to return to his past relevant work.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy.  The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert.  *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence.  *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a  verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966).  Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational.  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The plaintiff contends the ALJ erred in failing to find him disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to find that his depression is "severe"; (2) failing to find that he meets the criteria of Listings 1.04A and 11.04; and (3) discrediting the testimony of a lay witness, Jeff Yungman. The Court will address each in turn.

**I.     Depression**

The plaintiff first complains that the ALJ erred in concluding that the plaintiff's depression was not "severe." Social Security Ruling 96-3p states that the Commissioner will consider a claimant's impairment "severe" if it significantly limits his physical or mental abilities to perform basic work activities. SSR 96-3p.

In concluding that the plaintiff's depression was not severe, the ALJ relied primarily on the opinion of a psychiatrist at the Crisis Ministries homeless shelter, who found that the plaintiff's depression was "mild" (Tr. at 212) and that the plaintiff was generally "alert an [sic] oriented with normal speech and only a sad mood" (Tr. at 19). (See Tr. at 212.) The ALJ also emphasized, based upon the Crisis Ministries' psychiatrist, that the plaintiff's depression was simply the result of his physical impairments which were preventing him from being able to maintain employment. (Tr. 19, 212.) Finally, the ALJ relied on evidence of the plaintiff's daily activities (Tr. at 19) and the plaintiff's own testimony that his depression was "not so bad" and that "if he could just get back to work, he would be fine and the depression would not be an issue" (Tr. at 96).

In contrast, the plaintiff emphasizes that Dr. David Funsch performed a psychological evaluation and found that the plaintiff was, in fact, moderately impaired by his depressive symptoms. (Tr. at 170.) A state agency psychologist, Dr. Robbie A. Ronin, opined that the plaintiff suffered moderate limitations in his ability to function socially, in maintaining concentration, persistence, and pace, and in his ability to adapt. (Tr. at 192-198.) The plaintiff also identifies evidence that he was receiving regular treatment for depression by

a psychiatrist working in conjunction with the Crisis Ministries Center, who had prescribed Zoloft. (Tr. at 212.)

The Commissioner responds that this evidence does not render the ALJ's determination erroneous because the ALJ relied on other substantial evidence of record. The Court agrees that whether or not the plaintiff can produce conflicting evidence which might have resulted in a contrary interpretation of the record is of no moment, so long as other substantial evidence existed in support of the ALJ's decision. *See Blalock*, 483 F.2d at 775; *Millner v. Schweiker*, 725 F.2d 243, 245 (4th Cir. 1984) ("[I]t is immaterial that eight medical witnesses disagreed with the ALJ's conclusion, provided that one such witness gave sufficient probative evidence.").

But, the plaintiff has not simply proffered competing evidence. He also claims that the evidence relied upon by the ALJ is not substantial. First, the plaintiff argues that the ALJ mischaracterized the Crisis Ministries' records, which the ALJ summarized as reflecting only "mild" depression. (Tr. at 19.) In fact, as the plaintiff rightly complains, the records state only that the plaintiff appeared "to be mildly depressed ***today***." (Tr. at 212.) The sentence relied upon heavily by the ALJ, therefore, reflects simply a snapshot of the plaintiff's condition on that particular day. Moreover, the psychiatrist had, immediately before, stated that the plaintiff had a "long history of depression." *Id*. The Court agrees that the ALJ could not reasonably conclude from this particular medical record that the plaintiff's depression was merely "mild" in a general sense, as he apparently did.

Second, the plaintiff contends that the ALJ also misrepresented the variety and fullness of the plaintiff's daily activity. The plaintiff points to his testimony that he is unable to walk to the library because it is too far. (Tr. at 233.) And, that on rainy days, he was only sometimes able to come into the shelter and play cards. *Id*. The plaintiff also testified that he helped in the shelter's kitchen only twice a week and that he was unable to help out like he used to. (TR. at 233.)

The Court does not discern any specific error in the ALJ's representations concerning the plaintiff's activities. He did not imply that the plaintiff was able to do any more than suggested by the evidence above. (See Tr. at 19.) The ALJ also identified other activities that the plaintiff participated in with limited difficulty, including visiting with friends and family and the ability to manage his own finances. (Tr. at 19.) Accordingly, the ALJ's reliance on evidence of the plaintiff's daily activities was proper and he did not mischaracterize such evidence.

Finally, the plaintiff states that the cause of the plaintiff's depression is irrelevant and, thus, the ALJ erred in focusing on evidence which suggested that the plaintiff's depression was simply a product of his physical limitations and inability to find employment. The parties have not cited any cases in support. As a matter of simple logic, however, it seems reasonable for the ALJ to conclude that the alleged depression does not create an inability to work – to wit, disability – when the plaintiff has testified that it is, in fact, the inability to work, which has caused the depression. (See Tr. at 96 ("He feels like if he could just get back to work, he would be fine and the depression would not be an issue.").) "Disability" is specifically defined as "the inability to engage in any substantial gainful activity ***by reason of*** any medically determinable physical or mental impairment . . ." 42 U.S.C. §423(d)(1)(A) (emphasis added). Here, the evidence shows that it was the lack of work, that, in fact, caused the depression and not the other way around. (Tr. at 96, 170.) Certainly, the cause of the depression is not specifically relevant to an analysis of its severity, but it seems pointless for the ALJ to engage in a consideration of a limitation which the evidence demonstrates does not create an obstacle to employment. Accordingly there was no error in the ALJ's consideration of the cause of the plaintiff's depression.

Although the Court does reject that medical records of the Crisis Ministries' psychiatrist qualifies as substantial evidence of only a mild depressive limitation, the ALJ properly recited testimony of the plaintiff that reflected only mild limitations in daily activity and his own personal belief that his "depression was not so bad for him." (Tr. at 96.) More

7

importantly, the findings of Dr. Ronin and Dr. Funsch that the plaintiff suffered moderate limitations as a result of his depression are diminished by the fact that, in the least, Dr. Funsch also found that the plaintiff's depression was rightly attributable to his "physical limitations and inability to find steady employment." (Tr. at 170.) As stated, it is not the plaintiff's depression that has created his inability to perform work; the record seems to consistently suggest that the reverse is true. (*See* Tr. at 96, 170.) By the plaintiff's own testimony and that of examining physicians, therefore, his inability to work is not attributable to his depression. The ALJ had substantial evidence to so conclude.

## II.     Listing Analysis

The plaintiff next complains that the ALJ failed to perform the proper analysis to determine whether any of his impairments were severe enough to meet or equal one of the listing impairments. Specifically, the plaintiff claims that his spinal condition and ischemic attack and stroke meet Listings 1.04A - Disorders of the Spine and 11.04 - Central Nervous System Vascular Accident, respectively. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 1.04A, 11.04. The plaintiff contends, however, that the ALJ did not perform the analysis as required by the Fourth Circuit, in *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir.1986), to specifically compare each of the criteria of Listings 1.04A and 11.04 with the evidence of the plaintiff's symptoms. The Court agrees.

Generally, "[f]or a claimant to show that [his] impairment matches a Listing, [he] must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). The ALJ must first identify the relevant listed impairments. *Cook*, 783 F.2d at 1172. "He should then [compare] each of the listed criteria to the evidence of [the claimant's] symptoms." *Id.*; *see also* 20 C.F.R. § 416.926(a). "Without such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination." *Cook*, 783 F.2d at 1172.

Here, the ALJ included only the boilerplate conclusion that the plaintiff's impairments are not "severe enough to meet or medically equal, either singly or in combination, one of the listed impairments in Appendix 1, Subpart P. . . ." (TR 19-20.) That conclusory

8

statement, however, was not accompanied by any analysis or comparison whatsoever. By contrast, the ALJ in *Cook* actually performed a limited comparison that was still rejected by the Fourth Circuit as deficient.   *See Cook*, 783 F.2d at1173.

The plaintiff has profferred some evidence that a proper comparison will reveal that he meets the listings.  In regards to his spinal impairment, the plaintiff suffers from both a cervical and lumbar spinal impairment.  In a radiology report dated October 05, 2003, fractures of the plaintiff's spinous processes were seen at L1 and L2 with anterior spur formation at L3, L4, and L5. (Tr. at 159.) Further, an MRI dated August 23, 2002, revealed that the plaintiff had multilevel spondylosis of his cervical spine with central and left paracentral disc protrusion causing moderate to severe cord compression at C4/5 and an increased T2 cord signal compatible with myelomalacia.  (Tr. at 161.)  Concerning, the plaintiff's stroke and ischemic attack the plaintiff emphasizes that  every one of the doctors who examined Mr. Dean noted that he had bilateral upper extremity weakness and numbness as well as left lower leg weakness with a left foot-dragging antalgic gait (to varying degrees).

The Commissioner does not argue that the ALJ actually performed the analysis required by *Cook*.  Instead, the Commissioner has put forward evidence in support of the conclusion that the plaintiff's impairments do not meet the criteria of the listings.  The argument and evidence, however, miss the point.  The ALJ did not address any of the evidence now recited by the Commissioner in the context of a *Cook* analysis and, therefore, "it is simply impossible to tell whether there was substantial evidence to support the determination."  *Cook*, 783 F.2d at1172.  As the plaintiff confesses, it is not the Court's place to now perform a *de novo* analysis of the impairments and Listing criteria.  Upon remand, the ALJ should compare each of the criteria in Listings 1.04A and 11.04 to evidence of the plaintiff's spinal, ischemic attack, and stroke symptomology and prepare a written decision which expressly reflects that comparison.  *Id*.

**III.    Testimony of Jeff Yungman**

Finally, the plaintiff complains that the ALJ erred in discrediting the testimony of Jeff Yungman, the Clinical Director at the Crisis Ministries homeless shelter. Yungman gave testimony describing limitations in the plaintiff's performance of daily activities. (Tr. at 241-43.) In a single sentence, the ALJ summarily concluded that the testimony of Yungman was not fully credible because it was not supported by the objective medical evidence of record. (Tr. at 21.) The ALJ did not state specifically the ways in which Yungman's testimony was inconsistent with the medical evidence. The Commissioner argues that the ALJ was not required to accord the testimony of Yungman any particular significance because he was not "an acceptable medical source" competent to state an opinion concerning the plaintiff's limitations.

To the contrary, the Fourth Circuit has held that "descriptions of friends and family members who were in a position to observe the claimant's symptoms and daily activities have been routinely accepted as competent evidence." *Morgan v. Barnhart*, 142 Fed. Appx., 716, 731 (4th Cir. 2005). "A disregard for such evidence violates the Commissioner's regulations about observations by nonmedical sources as to how an impairment affects a claimant's ability to work." *Id*. Critically, "when an ALJ fails to believe lay testimony about a claimant's allegations of pain or other symptoms, he should discuss the testimony specifically and make explicit credibility determinations." *Id*.

The ALJ made no such discussion and should do so on remand concerning Yungman's testimony.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, the Court cannot conclude that the ALJ's decision to deny benefits was supported by substantial evidence. It is, therefore, RECOMMENDED, for the foregoing reasons, that the Commissioner's decision be reversed and remanded under sentence four of 42 U.S.C. § 405(g) to the Commissioner for further proceedings as set forth above. *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO RECOMMENDED.

                                                s/Bruce Howe Hendricks  
                                                United States Magistrate Judge

June 1, 2007  
Greenville, South Carolina